UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN ADMIRALTY

MILLENNIAL CAPITAL MANAGEMENT, LLC
f/k/a Exemplar Capital Management, LLC,

    Plaintiff,

v.                                              CASE NO. 3:16-cv-693-J-34MCR

M/Y CLOUD TEN, a 2002 123' Nichols
Brothers SWATH Vessel, Official No.
1130416, her engines, apparel, tackle,
boats, appurtenances, etc., *in rem*, and
ATLANTIC CLOUD CRUISE LINES,
LLC, *in personam*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Motion for Attorney's Fees ("Motion") (Doc. 28). The Motion was served on Defendant Atlantic Cloud Cruise Lines, LLC ("ACCL") on November 3, 2016. (*Id.* at 6-7; *see also* Doc. 28-6.) As no response has been filed to date, and the time for filing a response has passed,

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

the undersigned considers the Motion to be unopposed.  For the reasons stated herein, the undersigned recommends that the Motion be **GRANTED in part** and **DENIED in part**.

I.     Background

On June 6, 2016, Plaintiff filed a Verified Complaint in Admiralty to Foreclose Preferred Ship Mortgage against the Vessel M/Y Cloud Ten, *in rem*, and its owner ACCL, *in personam*.  (Doc. 1.)  The Complaint alleged that on April 14, 2015, ACCL became indebted to Plaintiff in the principal sum of $936,000 pursuant to a Promissory Note ("Note").  (*Id.* at ¶ 7.)  The Note included interest in the amount of $150,000 and was due to be paid in one balloon payment on or before August 14, 2015.  (*Id.* at ¶ 8.)  On April 14, 2015, ACCL also executed and delivered to Plaintiff a First Preferred Ship Mortgage encumbering the Vessel, which was recorded with the United States Coast Guard Vessel Documentation Center on May 4, 2015.  (*Id.* at ¶¶ 9-10.)  In January 2016, the parties amended the Note, increasing the principal sum owing to $2,000,000 in consideration of an extension of time in which to repay the Note and Mortgage to February 15, 2016.[2] (*Id.* at ¶ 11.)  A corresponding amendment to the First Preferred Ship Mortgage was executed on February 11, 2016, which was recorded with the United States Coast Guard Vessel Documentation Center on May 24, 2016.  (*Id.* at ¶¶ 12-13.)

---

[2] The amendment also reflects the lender's name change from Exemplar Capital Management, LLC to Millennial Capital Management, LLC.  (Doc. 1, ¶ 11.)

Plaintiff alleged that Defendants were in default for failing to pay the installment payment due on or before February 15, 2016.  (*Id.* at ¶¶ 16, 24, 28.)  Plaintiff also alleged that as of June 3, 2016, Defendants owed the principal amount of $2,000,000, exclusive of interest, costs, and attorney's fees.  (*Id.* at ¶¶ 18, 25, 29.)

On July 13, 2016, Plaintiff moved for entry of a Clerk's default against ACCL for failure to appear, answer, or otherwise plead to the Complaint.  (Doc. 15.)  On July 14, 2016, the Clerk entered a default against ACCL, a copy of which was furnished to ACCL.  (Doc. 16.)  On July 19, 2016, Plaintiff moved for entry of a Clerk's default against the Vessel M/Y Cloud Ten.  (Doc. 17.)  On July 26, 2016, the Clerk entered a default against the Vessel M/Y Cloud Ten.  (Doc. 18.)

On August 3, 2016, Plaintiff filed a Motion for Final Default Judgment and for Sale of M/Y Cloud Ten.  (Doc. 19.)  On September 29, 2016, the undersigned entered a Report and Recommendation on the same, concluding that "Defendants owe Plaintiff the principal amount of $2,000,000, plus interest at 25% per annum until the debt is satisfied in full," and that Plaintiff, as the prevailing party in this lawsuit, was "entitled to its reasonable attorneys' fees and costs." (Doc. 23 at 12-13.)

On October 19, 2016, the Report and Recommendation was adopted and the Clerk was directed, *inter alia*, to enter judgment in favor of Plaintiff and against Defendants in the principal amount of $2,000,000, plus pre-judgment

interest in the daily amount of $1,369.86 from February 17, 2016 through the date of final judgment.[3] (Doc. 25.) The Court's Order also directed Plaintiff to file any motions for an amendment of the judgment to include attorney's fees, costs, and/or post-judgment interest within fourteen days of confirmation of the sale. (*Id.*) On October 20, 2016, the Clerk entered judgment accordingly. (Doc. 26.) On November 23, 2016, the Clerk entered a Confirmation of Sale, noting the lack of objections to the sale of M/Y Cloud Ten to Millennial Capital Management, LLC on November 16, 2016. (Doc. 31.)

Plaintiff's present Motion was filed on November 3, 2016 and a proposed Bill of Costs was filed on November 2, 2016. (Docs. 27, 28.) In the Motion, Plaintiff seeks attorney and paralegal fees in the amount of $12,089.00 to be paid from the proceeds of the sale of M/Y Cloud Ten, and requests that Plaintiff be permitted to credit bid any award of fees and/or costs in addition to the judgment amount, in lieu of paying cash, at the U.S. Marshal sale of the Vessel and that the Court reserve ruling on the award of any additional fees incurred through the confirmation of the sale of M/Y Cloud Ten. (Doc. 28.) In the proposed Bill of Costs, Plaintiff asks the Clerk to tax costs in the total amount of $38,839.39. (Doc. 27.)

---

[3] The Court found that the daily amount of pre-judgment interest was $1,369.86, rather than $1,369.80 as stated in the Report. (Doc. 25 at 2 n.1.)

## II. Discussion

### A. Attorney and Paralegal Fees

Plaintiff seeks attorney and paralegal fees in the total amount of $12,089.00 for 3.5 hours billed by Robert D. McIntosh, Esq. at an hourly rate of $250.00, for 35 hours[4] billed by Adam B. Cooke, Esq. at an hourly rate of $250.00, and for 22.4 hours billed by paralegal Kimberly Brown at an hourly rate of $110.00.[5] As the prevailing party in this action, Plaintiff is entitled to its reasonable attorneys' fees and costs, pursuant to the terms of the Note[6] and the Mortgage.[7] (Doc. 23 at 13; Doc. 25.) Therefore, the issue before the Court is whether the attorneys' fees requested in the Motion are reasonable.

---

[4] Mr. McIntosh's Affidavit reflects that Mr. Cooke spent 30.8 hours on this case. (Doc. 28-2 at 3.) However, the present Motion, Mr. Cooke's Affidavit, and the time records all show that Mr. Cooke billed 35 hours. (Doc. 28 at 2; Doc. 28-3 at 2; Doc. 28-5 at 48.)

[5] Mr. Cooke spent 35.2 hours on this case, but billed for 35 hours; Ms. Brown spent 23.5 hours, but billed for 22.4 hours. (*See* Doc. 28-5.)

[6] The Note provides, in part, that "[i]n the event of any litigation or other proceeding between the parties concerning the interpretation or enforcement of any of the provisions of this Note, the prevailing party in such litigation or proceeding shall be entitled to its reasonable attorneys' fees and costs." (Doc. 1-1 at 2.)

[7] Paragraph 26(m) of the Mortgage provides, in relevant part:
On the occurrence of an Event of Default, Owner agrees to pay, as they are incurred, all reasonable attorneys' fees, marshal's or custodial fees, expenses of auction or sale, costs of appeal, costs and other expenses and the fees and expenses of other professionals incurred in connection with the following: (i) the enforcement of the Note, this Mortgage and all other Loan Documents and Security Documents . . . .
(Doc. 1-2 at 15.)

5

Regarding the amount of fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id*. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* "It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303.

"The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotations omitted); *Ceres Environ. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 202 (11th Cir. Apr. 25, 2012). The court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the

aid of witnesses as to value." *Barnes*, 168 F.3d at 437. In determining the reasonableness of the hourly rate, the court may also consider the twelve factors[8] enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (per curiam). "There is no precise rule or formula for making these determinations." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 164 (11th Cir. 2008) (per curiam) (citing *Hensley*, 461 U.S. at 436-37).

The Court finds the requested hourly rates to be reasonable. In support of these rates, Plaintiff has submitted the Affidavits of Mr. McIntosh, Mr. Cooke,[9] and Ms. Brown. (Docs. 28-2, 28-3, 28-4.) As stated in his Affidavit, Mr. McIntosh was admitted to practice law in this State in 1969, is a Board Certified Civil Trial Lawyer, and is currently a partner at McIntosh Schwartz, P.L. (Doc. 28-2.) His Affidavit also states:

> 11. Based upon my years of experience, familiarity with rates charged by other lawyers and fees awarded in similar litigation by Federal District Courts in Florida, in my opinion, a rate of

---

[8] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

[9] It appears that the first page of Mr. Cooke's Affidavit is missing. (*See* Doc. 28-3.)

> $250.00 an hour for partners, and $110.00 an hour for paralegal work is a reasonable and fair rate for maritime attorneys prosecuting ship mortgage foreclosure deficiencies, and is in line with the prevailing market rates for the Middle District of Florida.
> 12. The time expended by my staff and I was necessary to perform the work in prosecuting the above-referenced case.
> 13. In light of the demands of this case and the result obtained, the time and fees charge[d] were reasonable and necessary.

(Doc. 28-2 at 3.)

The Affidavits of Mr. Cooke and Ms. Brown similarly reflect that the time expended by them "was necessary to perform the work in prosecuting the above-referenced case," and that "[i]n light of the demands of this case and the result obtained, the time and fees charge[d] were reasonable and necessary." (Doc. 28-3 at 2; Doc. 28-4 at 3.) Although Mr. Cooke's Affidavit, as filed, does not show his experience, bar admissions, or areas of practice, the website of his law firm indicates, *inter alia*, that he was admitted to the Florida Bar in 2003, he is currently a partner at McIntosh Schwartz, P.L., he is Martindale-Hubbell AV Preeminent Peer Review Rated, and he is a member of the Southeastern Admiralty Law Institute.[10] According to this website, Mr. McIntosh is a chairman of the Southeastern Admiralty Law Association.

Plaintiff relies solely on its counsel's Affidavits to support the

---

[10] As noted in *Reliable Salvage & Towing, Inc. v. Gunter*, "of the more than 80,000 members of the Florida Bar only 250 maritime attorneys are admitted to the Southeastern Admiralty Law Institute." No. 2:06-cv-534-FtM-34SPC, 2007 WL 4557143, at *1 (M.D. Fla. Nov. 20, 2007) (report and recommendation adopted, as modified, by 2007 WL 4557140 (M.D. Fla. Dec. 21, 2007)).

reasonableness of the requested hourly rates. While Plaintiff has not cited any case in which Mr. McIntosh, Mr. Cooke, or their paralegals were awarded the hourly rates they request here, the Court's independent research reveals that this firm has represented clients in a number of admiralty actions in this District and throughout the State of Florida. For example, in 2010, a district court in the Southern District of Florida determined that a reasonable hourly rate for Mr. McIntosh was $300, for Mr. Cooke – $200 per hour, and for paralegals of their firm – $100 per hour. *Barclays Bank PLC v. M/Y We Won*, No. 09-60652-CIV, 2010 WL 2925179, *1 (S.D. Fla. June 30, 2010) (report and recommendation adopted by 2010 WL 2925166 (S.D. Fla. July 22, 2010)).

However, the same year, in the Middle District of Florida, Judge Covington found that Mr. McIntosh's hourly rate of $200.00 was a reasonable and fair rate and was consistent with the prevailing market rates for the Middle District of Florida, and approved an hourly rate of $150.00 for Mr. Cooke and $100.00 for the paralegals. *Provident Bank v. Curtain*, No. 8:09-cv-2084-T-33AEP, *1 (M.D. Fla. June 15, 2010). More recently, in 2013, Judge Conway, in approving a report and recommendation by Judge Smith, found that "Mr. McIntosh's asserted hourly rate of $200 . . . and Ms. Brown's asserted hourly rate of $100 . . . are at or below prevailing rates in this district and are reasonable under the circumstances." *Provident Bank v. Fox Family, LLC*, No. 6:13-cv-908-Orl-22TBS, 2013 WL 5652721, at *3 (M.D. Fla. Oct. 16, 2013).

In light of Judge Conway's decision in *Fox Family*, awards in similar cases, counsel's experience, skills, and credentials, the information included in the Affidavits, and the Court's own knowledge and experience concerning reasonable and proper fees in this legal market for similar services performed by attorneys and paralegals of comparable experience, the undersigned finds that counsel's hourly rate of $250.00 and the paralegal's hourly rate of $110.00 are reasonable for the work performed on this case. *See Gunter*, 2007 WL 4557143, at *1 (finding that an hourly rate of $300.00 was reasonable for an attorney who was a member of the Southeastern Admiralty Law Institute and had fifteen years of admiralty law experience); *see also Am. S. Ins. Co. v. Envtl. Innovations, Inc.*, Case No. 3:14-cv-1312-J-34JBT, 2015 WL 8113809, *2-3 (M.D. Fla. Nov. 2, 2015) (report and recommendation adopted by 2015 WL 8042749 (M.D. Fla. Dec. 7, 2015)) (approving an hourly rate of $295 for an attorney with 23 years of experience, a rate of $230 per hour for an attorney with seven years experience, and a rate of $125 per hour for a paralegal).

The undersigned further finds that the hours billed by counsel were reasonable and necessary. (*See* Doc. 28-5.) However, as to the hours billed by the paralegal, the undersigned recommends that these hours be reduced by 20% to account for work that is not traditionally performed by an attorney. *See Am. S. Ins. Co.*, 2015 WL 8113809 at *3 (finding the paralegal fees were recoverable because the paralegal was performing work traditionally performed by an

attorney) (citing *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1310 (S.D. Fla. 2009) (stating that work traditionally done by an attorney includes factual investigation, including locating and interviewing witnesses, assistance with depositions, interrogatories, and document production, compilation of statistical and financial data, checking legal citations and drafting correspondence, but not clerical work)). As such, Plaintiff should be compensated for 18 hours billed by Ms. Brown, 3.5 hours billed by Mr. McIntosh, and 35 hours billed by Mr. Cooke.

Multiplying these hours by the respective hourly rates produces a total fee of $11,605.00. Therefore, the lodestar in this case is $11,605.00. Although the Court may further adjust the lodestar, the undersigned's independent review of the record does not demonstrate that it would be justified. Therefore, the undersigned recommends that Plaintiff be awarded attorney and paralegal fees in the amount of $11,605.00.

| Timekeeper | Hourly Rate | Hours | Total |
|---|---|---|---|
| Robert D. McIntosh, Esq. | $250.00 | 3.5 | 875.00 |
| Adam B. Cooke, Esq. | $250.00 | 35.00 | 8,750.00 |
| Kimberly Brown (paralegal) | $110.00 | 18.00 | 1,980.00 |
| **Combined TOTAL:** | | | **11,605.00** |

### B. Costs

The day before filing the present Motion, Plaintiff filed a proposed Bill of Costs, asking the Clerk to tax as costs the following: (1) fees of the Clerk in the

sum of $400.00; (2) fees for service of process in the sum of $80.80; (3) other costs in the sum of $38,358.59, including: fees in the amount of $35,778.59 to National Maritime Services, Inc. to act as a Substitute Custodian through the Confirmation of Sale and release of the Vessel, U.S. Marshal's fees in the amount of $2,500.00 to arrest the Vessel, and fees in the amount of $80.00 to Financial News and Daily Record Jacksonville for publication of the Notice of Action and Arrest of the Vessel.  (Doc. 27.)  In support of these costs, Plaintiff has attached a receipt, an invoice, a copy of a check, an e-mail confirmation, and a summary of charges, as applicable to each item.  (*Id.*)  The proposed Bill of Costs was served on Defendants by first class mail on November 2, 2016; however, to date, Defendants have not responded to the same.  (*Id.* at 1.)

The filing fee of $400.00, the service of process fee of $80.80, and the U.S. Marshal's fee of $2,500.00 to arrest the Vessel are all taxable pursuant to 28 U.S.C. § 1920(1).[11]  *See, e.g.*, *Gunter*, 2007 WL 4557140 at *1 (allowing the filing fee and the service of process fee); *Bank of Am., N.A. v. M/V Triple Threat*, Case No. 3:13-cv-592-J-39JBT (M.D. Fla. July 11, 2014) (amending the judgment to include $400 for the filing fee, $2,500 for the U.S. Marshal's fee for arrest of the vessel, and $70.25 for the publication of the notice of action *in rem* and arrest of the vessel); *see also* 28 U.S.C. § 1921(a)(1) ("The United States marshals or

---

[11] The U.S. Marshal's fees are also recoverable under the terms of the Mortgage. (*See* Doc. 1-2 at 15.)

deputy marshals shall routinely collect, and a court may tax as costs, fees for the following: (A) Serving a writ of possession, partition, execution, attachment in rem, or libel in admiralty, warrant, attachment, summons, complaints, or any other writ, order or process in any case or proceeding."); M.D. Fla. Admiralty & Maritime R. 7.05(o)(2) ("If costs are awarded to any party, then all reasonable expenses paid by the prevailing party incidental to, or arising from the arrest or attachment of any vessel, property and/or cargo shall be taxed as costs in the case.").

The fee of $80.00 to the Financial News and Daily Record Jacksonville for publication of the Notice of Action and Arrest of the Vessel is also taxable. *See M/V Triple Threat*, Case No. 3:13-cv-592-J-39JBT (including in the judgment, *inter alia*, the fee of $70.25 for publication of the notice of action *in rem* and arrest of the vessel); *see also Wachovia Bank, N.A. v. M/Y Maybe Tomorrow*, No. 09-60547-CIV, 2011 WL 1196919, *4 (S.D. Fla. Jan. 4, 2011) (citing, *inter alia*, 28 U.S.C. § 1921(a)(1)(D)) (report and recommendation adopted by 2011 WL 1157339 (S.D. Fla. Mar. 29, 2011)).

Finally, the fee of $35,778.59 to National Maritime Services, Inc. to act as a Substitute Custodian is also recoverable.[12] *See* 28 U.S.C. § 1921(a)(1)(E) ("The United States marshals or deputy marshals shall routinely collect, and a court

---

[12] Custodial fees are recoverable pursuant to the terms of the Mortgage. (Doc. 1-2 at 15.)

may tax as costs, fees for the following: . . . (E) The keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving."); *Grupo Pesquero Noreste, C.A. v. Gatchell*, Case No. 6:16-cv-586-Orl-28GJK (M.D. Fla. Mar. 1, 2017) (report and recommendation adopted Apr. 10, 2017) (awarding plaintiff all custodial, dockage, and towage expenses paid to National Maritime Services, Inc., as a substitute custodian of the vessel); *M/V Triple Threat*, Case No. 3:13-cv-592-J-39JBT at ¶ 4 (M.D. Fla. July 11, 2014).

Based on the foregoing, the undersigned recommends that the Clerk be directed to tax as costs the filing fee of $400.00, the service of process fee of $80.80, the custodial fee of $35,778.59, the U.S. Marshal's fee of $2,500.00, and the publication fee of $80.00.

Plaintiff further requests that the award of attorneys' fees be paid from the proceeds of the sale of M/Y Cloud Ten, that Plaintiff be permitted to credit bid any award of fees and/or costs in addition to the judgment amount, in lieu of paying cash, at the U.S. Marshal sale of the Vessel and that the Court reserve ruling on the award of any additional fees incurred through the Confirmation of the Sale of M/Y Cloud Ten. Because the sale already took place and was confirmed on

14

November 23, 2016, Plaintiff's request for permission to credit bid any award of fees and/or costs in addition to the judgment amount, in lieu of paying cash, at the U.S. Marshal sale of the Vessel, appears moot. To the extent Plaintiff asks the Court to reserve ruling on the award of any additional fees incurred through the Confirmation of the Sale of M/Y Cloud Ten, the undersigned recommends that the request be granted. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending. . . . [M]otions for costs or attorney's fees are 'independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree.'"); *Montgomery & Larmoyeux v. Philip Morris, Inc.*, 19 F. Supp. 2d 1334, 1335 (S.D. Fla. 1998) (stating that under *Cooter & Gell*, "an award of attorney's fees is a collateral matter over which the district court retains jurisdiction even after being divested of jurisdiction on the merits"). As Plaintiff may be requesting additional fees incurred through the Confirmation of the Sale of M/Y Cloud Ten, it seems premature at this point to address Plaintiff's request that the award of attorneys' fees be paid from the proceeds of the sale of M/Y Cloud Ten.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 28**) be **GRANTED** to the extent that Plaintiff be awarded $11,605.00 in attorney and paralegal fees, $38,839.39 in costs and litigation expenses, and that the Court reserve ruling on the award of any

additional fees and/or costs incurred through the Confirmation of the Sale of M/Y Cloud Ten, and **DENIED** in all other respects.

2. The Clerk of Court be **DIRECTED** to enter an amended judgment in favor of Plaintiff Millennial Capital Management, LLC, and against Defendants M/Y Could Ten, a 2002 123' Nichols Brothers SWATH Vessel, Official No. 1130416, her engines, apparel, tackle, boats, appurtenances, etc., *in rem*, and Atlantic Cloud Cruise Lines, LLC, *in personam*, for $11,605.00 in attorney and paralegal fees, and $38,839.39 in costs and litigation expenses. The amended judgment should state that the Court reserves ruling on the award of any additional fees and/or costs incurred through the confirmation of the sale of M/Y Cloud Ten.

**DONE AND ENTERED** at Jacksonville, Florida, on August 1, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Atlantic Cloud Cruise Lines, LLC
228 Stellar
Ponte Vedra Beach, FL 32082